# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

SUSAN MATEJKA,

PLAINTIFF,

-VS-

DECISION AND ORDER

JO ANNE B. BARNHART, AS COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

04-CV-6635 CJS

DEFENDANT.

## APPEARANCES

For the Plaintiff:

William J. McDonald, Esq.
Bond and McDonald P.C.
91 Genesee Street
Geneva, NY 14456
(315) 789-8480

For the Defendant:

Kathleen Melhtretter
United States Attorney
By: Christopher V. Taffe, A.U.S.A.
100 State Street Room 620
Rochester, NY 14614
(585) 263-6760

## I. INTRODUCTION

**Siragusa, J**. Before the Court are plaintiff's (# 3) and the Commissioner's (# 5) motions for judgment on the pleadings. For the reasons stated below, the Court reverses the Commissioner's decision and remands the case pursuant to the fourth sentence of 42 U.S.C. § 405(g) for a new hearing.

## II. PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits on July 8, 2003 alleging a disability beginning March 31, 2000. Her application was denied on August 19, 2003. She then requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on August 4, 2004. On September 4, 2004, the ALJ issued a decision, finding that plaintiff was not disabled and denying her claim. That decision became final on December 2, 2004 when the Appeals Council denied her request for review. This action seeking review of that final decision was filed on December 30, 2004.

## III. BACKGROUND

Plaintiff, who is 43 years old, is a high school graduate. (Record at 49, 71.) Her work history includes employment as a travel consultant, daycare provider, chauffeur and restoration technician (cleaner). (Record at 66, 75, 161–163). She has not worked since March 31, 2000, the alleged onset date of her disability. (Record at 161).

## IV. MEDICAL HISTORY

***Physical Assessment***

On July 8, 1991, Dr. J. E. Nazar noted that both a magnetic resonance imaging (MRI) scan and a computerized axial tomography (CAT) scan of plaintiff's spine revealed a central herniated disc with bilateral compression of the nerve roots at L5. (R. 104). Additionally, a lumbar myelogram was positive for central disc herniation at L4-L5 with compression of the nerve root at L4-L5. (R. 97, 104).

On July 9, 1991, plaintiff underwent a lumbar laminectomy at Memorial Hospital, Inc. in Towanda, Pennsylvania. (R. 96-101). After the surgery, Dr. Nazar noted that plaintiff was completely free of pain at the hips and legs. (R. 96).

On June 5, 2003, because of low back pain, plaintiff began treating with Sean A. Stryker, M.D., who became her primary care physician. (Record at 134). Dr. Stryker observed that plaintiff stood "hunched over," noting that she had a long standing history of back pain aggravated by sitting and standing, and also observed that she walked with a mildly antalgic (distorted by pain) gait. (Record at 134). He reported that Ibuprofen, Tylenol, and Naproxen, as well as occasional chiropractic treatment, afforded plaintiff occasional relief from back pain. (R. 134). Dr. Stryker determined that she had a fair range of motion (ROM) in her back with lumbar flexion to 85˚ and extension to 5˚. His impression was chronic back pain. Dr. Stryker recommended evaluation by a pain specialist and opined that plaintiff could not be gainfully employed. (R. 134; see R. 135). Dr. Stryker suggested that Ms. Matejka apply for disability benefits despite her disinclination to "live off the state". (Record at 134).

A July 2003 lumbar x–ray showed marked disc space narrowing at L4–5, moderate narrowing at L5–S1 with low grade retrolisthesis of L3 on L4 and straightening of the lordotic curve. (Record at 128). Dr. Stryker related these findings to Ms. Matejka's spasm and pain. (Record at 133). Subsequently, a January 2004 lumbar MRI showed moderate to severe central spinal stenosis at L3–L4 and degenerative disc disease at all levels between L2 and S1. (Record at 132).

On July 25, 2003 Raja Jagtiani, M.D., of Industrial Medicine Associates, P.C., in Binghamton, New York, conducted an orthopedic consultative examination for the Division of Disability Determination. (R. 124-28). Plaintiff reported to Dr. Jagtiani that she felt good and was doing fine for at least five months following her laminectomy, after which time her back pain returned monthly, coinciding with her menstrual periods. This lasted she indicated until 1999 when she underwent a hysterectomy. ( R. 124, 113-15). She also reported a history of spastic colon, which she stated was well-controlled by medication. *Id.*

Dr. Jagtiani noted that plaintiff also had a "questionable history" of heart murmurs. (R. 125). He documented that her current medications consisted of Cenestin, Paxil, Axid AR, Tramadol, Naproxen and Amoxicillin.

Regarding her activities of daily living, plaintiff told Dr. Jagtiani that her husband performed most of the household chores, but that she cooked about twice a month, showered and dressed herself, watched television, read, cared for her pets and plants, and socialized with friends. *Id.*

According to Dr. Jagtiani, an x-ray of plaintiff's lumbosacral spine, taken on the date of his examination, revealed disc space narrowing, low grade retrolisthesis at L3-L4, and straightening of the lordotic curve. (R. 127; see R. 128). Dr. Jagtiani observed that plaintiff had full range of motion in her hips and ankles; that flexion/extension of her knees was to 110˚ on the right and to 130˚ on the left; that she had no muscle atrophy and no sensory abnormality; that her reflexes were physiological and equal; and that there was no joint effusion, inflammation, or instability. (R. 127).

Dr. Jagtiani's diagnosis was low back pain syndrome, cervical pain syndrome, spastic colon, and history of heart murmur. (R. 127). His prognosis was fair. The doctor assessed a mild restriction for prolonged standing and walking, a moderate restriction for squatting and kneeling, and a marked restriction for heavy lifting and carrying. *Id.*

On August 18, 2003, Dr. Putcha,[1] a non-examining State agency medical consultant, assessed that plaintiff could do sedentary work. (R. 129). Dr. Putcha noted plaintiff's 1991 laminectomy and that she had no neurological impairment. He reported that plaintiff had episodic back pain but was independent in ambulation and in the activities of daily living. *Id.*

---

[1]Dr. Putcha's first name does not appear in the report. (Record at 129.)

On September 2, 2003, Dr. Stryker saw plaintiff for a follow-up visit and noted that, although no formal examination was performed on that day, his impression was chronic back pain. (R. 133). Plaintiff refused a referral to the pain clinic for epidural steroid injections. *Id.* He also noted, "[s]he states that simply sitting and waiting five minutes in the office here today has caused significant right leg pain. Indeed, she is sitting with her weight shifted to the left. She appears to be in pain. At times she is tearful."(Dr. Stryker's office note 9/2/03, Tr. 133).

On January 23, 2004, plaintiff underwent an MRI scan of her lumbar spine at Associated Radiologists of the Finger Lakes in Elmira Heights, New York. (R. 132; see R. 155-56). According to the radiologist, Jude Leblane, M.D., the MRI scan revealed moderate to severe central spinal stenosis at the level of L3, L4, with minimal central disk bulging at the same level but mainly degenerative changes along the posterior elements causing stenosis. Dr. Leblane also noted degenerative disc disease at all levels between L2 and S1 and opined that plaintiff was status post laminectomy at the L4-L5 level with evidence of prior diskectomy at the same level. Dr. Leblane further observed that plaintiff had normal looking distal spinal cord and cauda equina structures, that her alignment was normal, and that she had slight stenosis of foramina at the L4, L5 level. *Id.*

Plaintiff underwent six physical therapy sessions at Orthopedic and Sports Therapy Associates, Elmira, New York from January 28, 2004 until February 24, 2004. (R. 138-44). Upon initial evaluation, on January 28, 2004, the physical therapist, Teri Fullner, noted that plaintiff's previous functional level was within normal limits, and her general health was good. (R. 139). Plaintiff reported that she had difficulty doing household chores and prolonged activities. (R. 140). According to Ms. Fullner, plaintiff presented with decreased ROM and strength, impaired gait, decreased functionality, and increased pain. (R. 142). Ms. Fullner, after her initial assessment of plaintiff, recommended physical therapy and a

home exercise program. Id. Ms. Fullner's prognosis was that plaintiff would return to her previous functional level and her rehabilitation potential was excellent. (R. 141).

On February 2, 2004, the Ms. Fullner noted that plaintiff tolerated her physical therapy well but complained of increased pain since her last visit. (R. 142). On February 4, 2004, Ms. Fullner reported that plaintiff had no new complaints, and that she tolerated the physical therapy session well. (R. 142)

On February 10, 2004 plaintiff reported at her therapy session that her back felt "a little better." (R. 142). Ms. Fullner observed that plaintiff tolerated the physical therapy session well. Id. Then, on February 11, 2004, plaintiff reported to Ms. Fullner that her back was sore, (R. 143). She stated that on a scale of zero to ten, with ten being the highest level of pain, her back pain was only between two and three. Again, Ms. Fullner observed that plaintiff tolerated the physical therapy well. Id. However, on February 18, 2004, plaintiff rated her back pain as an eight and reported that she was unable to function. (R. 143). Ms. Fullner advised plaintiff to postpone further physical therapy. Id. Plaintiff's February 20, 2004, physical therapy session was cancelled and on February 24, 2004 plaintiff was discharged from physical therapy. (R. 143).

On February 23, 2004, Dr. Stryker saw plaintiff for a follow-up visit on her complaints of depression. (Record at 130.) In addition to commenting on her depression (*see infra*), Dr. Stryker noted that plaintiff's had spinal stenosis. Plaintiff reported that Dr. Boman declined a referral from Dr. Stryker because she was not a surgical candidate. Consequently, Dr. Stryker referred plaintiff to a pain clinic for further evaluation. Id.

On April 21, 2004. Plaintiff's physical therapist, Ms. Fullner, completed a RFC evaluation form at the request of plaintiff's attorney, (R. 149-50). Ms. Fullner assessed that plaintiff's condition could be expected to produce pain. (R. 149). According to Ms. Fullner, plaintiff could occasionally balance, climb stairs, or reach, but could not climb, stoop,

crouch, kneel, crawl, push, or pull. Id. Ms. Fullner also concluded that, while plaintiff could stand, walk, or sit for one hour continuously, during an eight-hour workday, she could only do so for three hours. (R. 150). Finally, Ms. Fullner assessed that plaintiff could occasionally lift and carry twenty pounds, and frequently lift and carry less than ten pounds. *Id.*

On May 11, 2004, Dr. Stryker completed a RFC evaluation form at the request of plaintiff's attorney. (R. 153-54). Dr. Stryker assessed that plaintiff could occasionally climb stairs or reach but could not balance, stoop, crouch, kneel, crawl, push, or pull. (R. 153-54). Plaintiff could stand and/or walk continuously for half an hour, and could sit continuously for two hours. (R. 154). During an eight-hour workday, plaintiff could stand and/or walk for two hours, and sit for eight hours. Plaintiff could occasionally lift and carry ten pounds, and frequently lift and carry less than ten pounds. *Id.*

***Psychological Assessment***

In a report dated February 26, 2004, Milissa Cerio, a clinical case social worker, noted that she met with plaintiff on January 20, 2004 for an intake evaluation. (R. 145; see R. 147-48). Plaintiff was self-referred and presented with symptoms of depression and anxiety, and reported that she had not taken her Paxil regularly. (R. 145). Ms. Cerio recommended that plaintiff visit Dr. Stryker for a medication re-evaluation. Ms. Cerio noted that on February 5, 2004, Dr. Stryker changed plaintiff's medication from Paxil to Lexapro. (R. 146).

On February 23, 2004, Dr. Stryker saw plaintiff for a follow-up visit on her complaints of depression. (Record at 130.) Plaintiff reported that Lexapro and psychotherapy had helped ease her depression. (R. 130). Dr. Stryker observed that plaintiff made good eye contact, had reasonably good insight, and her affect was improved. The doctor's

impression was that plaintiff's depression had improved and he recommended continued use of Lexapro.

On April 28, 2004. Ms. Cerio, at the request of plaintiff's attorney, completed an assessment of plaintiff's ability to do work-related activities, (R. 151-52). She noted that plaintiff's ability to tolerate stress and her ability to maintain attention/concentration were both poor. (R. 151). Ms. Cerio concluded that plaintiff's ability to work was limited by both dysthymic disorder and generalized anxiety disorder. Ms. Cerio opined that plaintiff was unable to work due to depression and pain. Id. Plaintiff reported difficulty getting out of bed and doing simple tasks. (R. 152). She was socially withdrawn with constant worry, no motivation, and fatigue.(R. 152). Plaintiff complained of stomach pains, but medical tests were negative. She attended physical therapy and had difficulty sleeping due to pain. Id.

## V. ANALYSIS

### A.  The Standard for Finding a Disability

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). The Social Security Administration ("SSA") has promulgated regulations which establish a five-step sequential analysis an ALJ must follow:

> First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities." If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past

> relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501(citations and internal quotation marks omitted). Plaintiff bears the burden of proof for steps one through four. The burden of proof shifts to the Commissioner for the fifth step. *See DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir.1998); *Colon v. Apfel,* No. 98 Civ. 4732 (HB), 2000 U.S. Dist. LEXIS 2928, *8 n.2, 2000 WL 282898, *3 (S.D.N.Y., Mar. 15, 2000).

**B. The Standard of Review**

The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal*, 134 F.3d at 501. It is well settled that

> it is not the function of a reviewing court to determine *de novo* whether the claimant is disabled. Assuming the Secretary [Commissioner] has applied proper legal principles, judicial review is limited to an assessment of whether the findings of fact are supported by substantial evidence; if they are supported by such evidence, they are conclusive.

*Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 231–32. Consequently, if the ALJ's findings are supported by substantial evidence and the correct legal principles were applied, the findings will be sustained even where substantial evidence may support the claimant's position and despite the fact that the Court, had it heard the evidence *de novo*, might have found otherwise. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)*; Campbell v. Barnhart*, 178 F. Supp. 2d 123, 128 (D. Conn. 2001). The Court also reviews the Commissioner's decision to determine whether the correct legal standards were applied. J*ohnson v. Bowen,* 817 F. 2d 983, 985 (2d Cir. 1987). This legal standard review is de novo as no deference is accorded the Commissioner's conclusions of law. *Keefe v. Shalala*, 71 F. 3d 1060, 1062 (2d Cir. 1995).

**C.     The Administrative Law Judge's Decision**

The Administrative Law Judge ("ALJ") found that: plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date. (R. 30, 34). See 20 C.F.R.º 404.1520(b); that her degenerative disc disease was a "severe"[2] impairment. (R. 33,34); but that plaintiff's irritable bowel syndrome and depression were not severe impairments. The ALJ acknowledged that Ms. Cerio diagnosed dysthymic disorder and generalized anxiety disorder and opined that plaintiff was unable to work due to pain and depression. (R. 32; see R. 151). However, he discounted Ms. Cerio's diagnosis, since she was not a physician or psychologist and since he determined that her opinion was not supported by treatment records. (R. 32). See 20 C.F.R 404.1513(d)(a therapist is not an acceptable medical source).

Further, the ALJ concluded that plaintiff's back condition was an impairment which did not meet or equal the criteria contained under the Listing of Impairments of Appendix 1, Subpart P, Regulations No. 4. (R. 33, 34). The ALJ went on to find that plaintiff could work at the sedentary exertional level. (R. 33). While the ALJ acknowledged Dr. Stryker's residual functional assessment, he afforded it little weight since he determined it was not supported by treatment records and was inconsistent with the weight of the medical evidence. (R. 32). The ALJ also acknowledged the opinion of the physical therapist, but found it unacceptable, since the treatment was brief and plaintiff stated that it was of no value. (R. 32). In assessing plaintiff's residual functional capacity, the ALJ also considered her credibility, and found that plaintiff's allegations of a disabling back condition were not fully believable. (R. 32). The ALJ then compared plaintiff's resudual functional capacity with her past relevant work. (R. 33, 34) as a travel consultant. (R. 162- 63; see R. 66, 75). He found that the job of travel consultant was sedentary in nature and, that plaintiff could

---

[2]A severe impairment is an impairment that significantly limits an individual's ability to do basic work activities. 20 C.F.R. § 404.1520(c).

perform her past relevant work as a travel consultant. (Record at 33.) Accordingly, stopping at the fourth step in his assessment, the ALJ found that plaintiff was able to do her past relevant work and was not, therefore, disabled.

### D. Analysis

#### 1. Past Relevant Work

The ALJ determined that plaintiff's past relevant work was sedentary in nature and the plaintiff was capable of sedentary work. "Pursuant to both case law and Social Security Ruling 82-62, in order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." *Kerulo v. Apfel*, No. 98 CIV. 7315 MBM, 1999 WL 813350, *8 (S.D.N.Y. Oct. 7, 1999) (citations omitted).

> Social Security Ruling 96-8p clarifies the ALJ's duties under step four. Once the demands of the claimant's past relevant work are ascertained, the ALJ "must…identify the [claimant's] ability to perform the specific work-related abilities on a function-by-function basis." Social Security Ruling 96-8p, 1996 WL 374184, at *1 (S.S.A.1996). Specifically, "the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Id. at *7.

*Selmo v. Barnhart*, No. No. 01 Civ. 7374 (SHS), 2002 WL 31445020, *9 (S.D.N.Y. Oct. 31, 2002). In her Disability Report (Record at 64-73), plaintiff reported that her past work as a travel consultant, she lifted up to 50 pounds of materials and frequently lifted less than 10 pounds. (Record at 66.) At the hearing, the ALJ inquired about the job, asking, "[s]o [it was] primarily a desk-type of job, talking on the phone and —." (Record at 162.) He did not further clarify the exertional requirements of the work. Nevertheless, in his decision, the ALJ concluded, "the claimant's past relevant work as a travel consultant was sedentary in nature and did not require climbing or crawling. Such work also does not require mor than occasional stooping, kneeling, crouching or balancing." (Record at 33.) The Court finds that

the ALJ's conclusions about the exertional requirements of the travel consultant job are not supported by substantial evidence in the record. Therefore, his determination that plaintiff could perform her past relevant work must be reversed.

**2. Claimant's Credibility**

Plaintiff argues that the ALJ also failed to make a reasoned finding regarding her credibility pursuant to 20 C.F.R. § 404.1529. With regard to evaluating a claimant's credibility,

> [t]he regulations set forth a two-step process to evaluate a claimant's testimony regarding his symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. Such an evaluation of a claimant's credibility is entitled to great deference if it is supported by substantial evidence.
>
> In assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony. The regulations require the ALJ to consider not only the objective medical evidence, but also:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms ...; and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Murphy v. Barnhart*, No. 00Civ.9621(JSR)(FM), 2003 WL 470572, *10-*11 (S.D.N.Y. Jan. 21, 2003) (*citing* 20 C.F.R. § 404.1529(c)) (other citations and internal quotations omitted).

In making his determination of plaintiff's credibility, The ALJ wrote,

> The undersigned Administrative Law Judge finds the testimony of the claimant not fully credible concerning the severity of the symptoms and the extent of the limitations. When she completed her activities of daily living form in July 2003, 13 months prior to the hearing, the claimant indicated she did light housework, watered her plants, and did crafts and painting, all of which she now essentially denies, although there is no evidence of any significant deterioration of her condition during that period. Similarly, she left her last job as a travel consultant, not because of debility, but because the company closed. Yet she now denies that she could have continued in that job. Overall, the severity and extent of her limitations are not supported by the objective medical evidence of record.

(Record at 32.)

In that regard, plaintiff completed a form for the New York State Office of Temporary and Disability Assistance on July 24, 2003, and indicated, with respect to her activities of daily living, "I can only sleep a few hours at a time at night; during the day I generally have to lay down a few times. Take dog outside a few times—water plants—putter with crafts/painting. Antidepressants sometimes make me more tired or medication for pain." (Record at 80.) To the question on the form asking what she could do before her disability, but could not do at the time she filled-in the form, she wrote, "lift, bend, run, sex, normal household chores, vacuum, laundry, make beds, gardening, outdoor chores. I dust if I don't have to reach. Sitting is uncomfortable after about 15 min. Cannot stand for long periods—so I keep alternating. Driving is difficult—cannot drive standard any longer. Cannot exercise, ride bike, ride equipment that is rough/vibrates. Cross legs, wear healed shoes, dance." (Record at 81.) When making his assessment of plaintiff's credibility, if the ALJ perceived that her testimony contradicted the prior statements in the form, then "the interests of fairness and accuracy both should have led him to ask her about the perceived inconsistency, rather than simply snap the trap closed in his written decision." *Fernandez v. Apfel*, No. 98-CV-6194 (JG), 2000 WL 271967, *8 (E.D.N.Y. Mar. 7, 2000).

Additionally, as Judge Larimer observed in *Youney v. Barnhart*, 280 F. Supp. 2d 52 (W.D.N.Y. 2003):

> It is important to note that plaintiff's allegations need not be substantiated by medical evidence, but simply consistent with it. The entire purpose of sections 404.1529 and 416.929 is to provide a means for claimants to offer proof that is not wholly demonstrable by medical evidence. The regulations provide that the Commissioner must first determine only whether the impairments "could reasonably be expected to produce [plaintiff's] pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("Since symptoms sometimes suggest a greater severity of impairment *than can be shown by objective medical evidence alone*, we will carefully consider any other information you may submit about your symptoms ... Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions ..., which can *reasonably be accepted as consistent* with the objective medical evidence and other evidence, will be taken into account ....") (emphasis added). Only allegations beyond what is substantiated by medical evidence are to be subjected to a credibility analysis. To require plaintiff to fully substantiate her symptoms with medical evidence would be both in abrogation of the regulations and against their stated purpose. See *Castillo v. Apfel*, 1999 U.S. Dist. LEXIS 3048, No. 98 CIV. 0792, 1999 WL 147748, *7 (S.D.N.Y. Mar. 18, 1999) (*citing Harrison v. Sec'y of Health & Human Servs.*, 901 F. Supp. 749, 757 (S.D.N.Y. 1995) and *Diaz v. Bowen*, 664 F. Supp. 725, 730 (S.D.N.Y. 1987)).

*Youney*, 280 F. Supp. 2d at 61. In his conclusion that "there is no evidence of any significant deterioration of her condition during that period," the ALJ has misapplied the standard outlined above. Further, the ALJ failed to analyze a number of credibility factors he was required to consider. He rejected, without comment, the supporting affidavit from Summer Flansberg and the observations of Social Security Administration staff that plaintiff had difficulty sitting, standing and walking (Record at 61, 88-90). *See Carroll v. Health and Human Services*, 705 F. 2d 638, 642 (2d Cir. 1983) ("In determining whether a claimant is disabled the Secretary must consider…the claimant's subjective evidence of pain and physical incapacity as testified to by himself and others who observed him…."); *Pagan v. Chater*, 923 F. Supp. 547, 556 (S.D.N.Y. 1996) ("The ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error."); *Maisch v. Heckler*, 606 F. Supp. 982, 989 (S.D.N.Y. 1985) ("In assessing an individual's disability, the Secretary must consider: …the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others….").

"One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p (Credibility). Here, the ALJ also failed to consider that plaintiff's claim of disability was consistent with the medical history she gave to Drs. Jagtiani and Stryker, as well as information she provided to physical therapist Teri Fullner. (Record at 124, 133, 134, 139.) Dr. Stryker wrote in a note dated June 5, 2003 that plaintiff, "has chronic back pain." (Record at 135.) Dr. Putcha noted in his consultive examination report, dated August 12, 2003, that plaintiff "[h]as episodic back pain." (Record at 129.) Dr. Jagtiani wrote in his July 25, 2003, report, "[d]iagnosis: (1) low back pain syndrome, (2) cervical pain syndrome." (Record at 127.) The ALJ also did not consider plaintiff's reported reluctance to apply for Social Security disability benefits. When she first came under Dr. Stryker's care in June 2003, the doctor noted that she "never applied for disability because 'I don't want to live off the state'." (Record at 134.) Dr. Stryker felt that she could not be gainfully employed and suggested to her that she apply for disability. (Record at 134.) She then filed her application one month later. (Record at 49.)

Further, the ALJ was required to assess plaintiff's subjective complaints and testimony in light of the evidence in the record and provide a detailed analysis in his decision. *See Murphy*, No. 00Civ.9621(JSR)(FM), 2003 WL 470572 at *10-*11. Since the ALJ's credibility determination was not made in accordance with the regulatory requirements, his decision is subject to reversal on this basis as well. 42 U.S.C. § 405(g).

Plaintiff urges the Court to adopt the Eleventh Circuit rule which she states requires, in such circumstances, that the claimant's testimony be accepted as true as a matter of law. *Foote v. Chater*, 67 F. 3d 1553, 1561-62 (11th Cir. 1995). The Court notes that the Eleventh Circuit wrote in that case, "[i]f proof of disability is based upon subjective evidence and a credibility determination is, therefore, critical to the decision, 'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount

to a specific credibility finding.'" *Foote*, 67 F.3d at 1562 (*quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983)). The Court does not find that the Eleventh Circuit's decision requires that in the circumstances present here, the claimant's testimony be accepted as true. Further, the Court determines this would amount to fact finding, which, under § 405(g), is not within this Court's authority.

**3. Residual Functional Capacity**

The ALJ's residual functional capacity ("RFC") assessment is insufficiently presented in his decision to permit the Court to carry out its review function. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) ("On the basis of the ALJ's insufficient findings here, we cannot determine whether his conclusory statement that Ferraris could carry out sedentary work is supported by substantial evidence."). Here, the ALJ's RFC findings were as follows:

> Considering the entire record, the undersigned find[s] the claimant is limited to sedentary work, or work performed primarily in a seated position and not requiring lifting more than 10 pounds. Additionally, she is precluded from climbing or crawling and can only occasionally balance, stoop, kneel or crouch.

(Record at 33.) These findings fail to provide "function-by-function assessment" of plaintiff's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The ALJ's decision did not address plaintiff's ability to sit, stand, or walk. *Myers v. Apfel*, 238 F. 3d 617, 620, 621 (5th Cir. 2001) ("Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. 'Each function must be considered separately.'") (citation omitted); *Murphy v. Barnhart*, No. 00Civ.9621(JSR)(FM), 2003 WL 470572 at *9 (S.D.N.Y. Jan. 21, 2003) ("Under the regulations, the ALJ also must analyze a claimant's RFC on a function-by-function basis."); SSR 96-8p ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work¡related abilities on a function-by-function basis, including the functions in paragraphs (b), (c) & (d) of 20

C.F.R. §§ 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."). Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence.

**E. Mental Health**

The ALJ determined that plaintiff's depression was not severe. (Record at 33.) In a case such as plaintiff's, "an impairment(s) is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner." SSR 96-3p (Introduction). "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." *Id.*; *see also* SSR 85-28 (Policy Clarification) ("an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities…."). The Commissioner's ruling requires that any possible doubt is to be resolved in favor of a finding of severity:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

SSR 85-28 (Policy Clarification). Here, there is no medical evidence to contradict the opinion of treating psychotherapist, Milissa Cerio, that plaintiff is unable to deal with work stresses or to maintain attention and concentration due to depression and pain. (Record at 151, 152.) At a minimum, the ALJ should have ordered a psychiatric consultative examination to determine the severity of plaintiff's depression. 20 CFR § 404.1519a(b); *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90 & 91 (W.D.N.Y. 2000) ("Given the ALJ's rejection of Dr. Caruso's findings, and the absence of other medical evidence in the record, the ALJ should have sought a conclusive determination from a medical consultant…. The

regulations require that the ALJ must normally order a consultative examination when '[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved….' 20 C.F.R. § 404.1519a(b)(4)."). Since the ALJ failed to properly develop the record sufficiently to determine the severity of plaintiff's depression, the Court cannot find that his conclusion that her depression was not severe is supported by substantial evidence.

## V. CONCLUSION

Accordingly, the Court denies the Commissioner's motion (# 5) for judgment on the pleadings, grants plaintiff's motion (# 3) for judgment of remand, reverses the Commissioner's final decision, and remands the case under the fourth sentence of 42 U.S.C. § 405(g) for corrective action consistent with this decision and order.

IT IS SO ORDERED.

Dated:   September 16, 2005
         Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge